UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

REPUBLICAN PARTY OF LOUISIANA

VERSUS                                        CIVIL ACTION NO. 11-796-JJB

J. THOMAS "TOM" SCHEDLER, in his official
capacity as Louisiana Secretary of State, ET AL.

## <u>RULING AND ORDER ON APPLICATION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION</u>

Before the Court is an application for a temporary restraining order and a motion for preliminary injunction (Doc. 2) filed by the Republican Party of Louisiana ("the Party"), against Louisiana Secretary of State Tom Schedler and Commissioner of Elections Angie Rogers.  The Party seeks 1) a declaration that a certain portion of Louisiana election law, La. R.S. 18:443.2(7), unconstitutionally infringes its members' constitutional rights of political association in violation of the First Amendment to the Constitution of the United States (and similar provisions in the Louisiana Constitution), and 2) an injunction prohibiting defendants from conducting election qualifying for the 2012 Republican State Central Committee ("RSCC") seats pursuant to the state's default statutory plan and ordering the same officials to conduct qualifying in accordance with their plan.

The Court held a status conference on November 28, 2011, wherein the parties[1] made informal arguments and agreed that the Court should decide the issue on the briefs submitted, the arguments made at the conference, and the law as the Court

---

[1] Present at this conference were not only attorneys for the plaintiff and defendant, but also counsel for the state attorney general, who was duly noticed and served in this matter pursuant to Fed. Rule Civ. P. 5.1.  (Doc. 7).  Robert Morgan and John Treen, two RSCC members involved as parties in the related state court litigation, were also present at the conference, though Treen participated by phone.

understands it to apply to this situation.  Formal oral argument is impracticable due to time constraints on the parties and the Court, considering the necessity of clarifying the electoral timelines at issue in time for the Secretary of State's office to meaningfully comply with this ruling.  Jurisdiction is based on a federal question, 28 U.S.C. § 1331, since plaintiff is suing for breach of a constitutional right by a state actor within the meaning of 42 U.S.C. § 1983.

I.

Louisiana election law provides for the election of state central committee members of certain political parties in accordance with the party's desired plan, with the significant caveat that the plan must be submitted at least ninety days prior to qualification of candidates for those seats.   La. R.S. 18:443.2(7).[2]  If a plan is not submitted by the party, the statutory default stipulates that one central committee member shall be elected from each legislative district of both houses of the Louisiana Legislature (*i.e.*, one central committee member from each of the 105 House districts and one member from each of the 39 Senate districts for a total of 144 members).  *Id.*

Members of the RSCC will be elected during the municipal and presidential primaries held on March 24, 2012.  Qualifying for those elections takes place from

---

[2] The provision provides in pertinent part:
Notwithstanding any provision of law to the contrary, a state central committee of a recognized political party with which thirty percent or less of the registered voters in the state are affiliated on the day of the close of registration for the gubernatorial general election shall be established, composed, apportioned, and elected as follows:
***
(7) A state central committee shall adopt a plan to provide for the number of members of such committee and the apportionment thereof, and such plan shall be effective if the committee files a copy of the plan with the secretary of state not later than the ninetieth day prior to the opening of qualifying for the election of the members of such state central committee. If a state central committee does not adopt and file a plan as provided herein, the membership of such state central committee shall be composed of one hundred forty-four members with one member elected from each of the districts from which members of the House of Representatives and the Senate of the Legislature are elected.

December 7-9, 2011.  Under the statutory 90-day pre-qualification requirement, the plan must have been submitted to the Secretary of State by September 8, 2011.  However, the Party contends that delays in information dissemination regarding important demographic considerations the Republican Party takes into account when formulating RSCC member districts—electoral mapping of districts, precinct allocation among districts, and the like—occurred due to Census data publication, legislative reapportionment, and preclearance of those districts by the Department of Justice.  Because of those delays—some inherent in the reapportionment process due to Louisiana's past compliance history with federal voting rights laws, some unique to the situation at hand—the Secretary of State did not receive confirmation of precinct boundaries until late August of this year and thus was unable to provide complete information of the electoral changes to the Party until September 6, 2011.  The Party therefore only had, in essence, 48 hours to submit an election plan in compliance with the statute.

Because of the information deficit, the Party's Executive Committee (a body distinct from the RSCC) authorized the Party's executive director to give notice to the Secretary of State prior to the deadline that the Party simply wished for RSCC elections to be held according to the plan the Party used for the 2008 elections.  The executive director did so via letter and volunteered to help iron out any logistical difficulties should implementation of their submitted plan conflict with the new precinct boundaries applicable to the 2012 elections (since the new precinct allocation differs from the last RSCC election in 2008).  The Secretary of State's office rejected the plan as insufficient and impracticable, owing largely to the parish changes in precinct allocation.

Meanwhile, RSCC member John Treen filed suit in state court seeking to have the default statutory plan implemented and an injunction against the Party's plan issued. The state court suit asserted statutory non-compliance as its basis and raised no constitutional claim, and the sole defendant was the Secretary of State. Robert Morgan, another RSCC member, was permitted to intervene. On November 16, 2011, a state district judge issued an injunction preventing the Secretary of State from using the Party's plan in the election and ordering him to use the default statutory plan for the election.

The Party then filed this action on November 21, 2011, seeking to have the statute declared unconstitutional and thus prevent the Secretary of State from conducting qualifying under the statutory default plan as an unconstitutional application of the statute.

II.

A. <u>Standard of Review</u>

Rule 65 of the Federal Rules of Civil Procedure authorizes equitable relief in the form of a temporary restraining order ("TRO") or a preliminary injunction. To obtain such relief, a plaintiff must prove the four elements traditionally demanded by equity:

(1) Likelihood of success on the merits;
(2) Likelihood of suffering irreparable harm in the absence of the relief sought;
(3) The threatened injury to plaintiff outweighs the threatened harm to defendant; and
(4) The relief is in the public interest.

*See, e.g., Winter v. Natural Resources Defense Council, Inc.*, 555 U. S. 7, 20 (2008).

B. <u>Procedural and Jurisdictional Considerations</u>

At the outset, though, the Court must deal with several procedural impediments which might arguably preclude reaching the merits of this matter.

First, the *Rooker-Feldman* doctrine prevents lower federal courts from sitting in direct review of state court decisions in the absence of congressional authorization. *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). The state court order issued in the related litigation might be threatened by this Court exercising jurisdiction. However, the Supreme Court in *Lance v. Dennis*, 546 U.S. 459 (2006), concluded that *Rooker-Feldman* does not bar a federal suit when the federal plaintiff was not a party to the state court judgment. Here, the Republican Party of Louisiana was not a party to the state court proceeding, and thus *Rooker-Feldman* does not bar this suit.

Second, principles of abstention do not control here. All the parties agree that the state court litigation is final. Exercising jurisdiction in this case and reaching a determination on the merits will therefore not infringe upon the jurisdiction or decision-making process of the state court. Any concern about violating federalism principles are thus minimal here.

Third, the Anti-Injunction Act, 28 U.S.C. § 2283, does not prevent action by the Court in this case. Indeed, it authorizes it. The statute reads:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283. The federal statute which plaintiff uses as a vehicle to assert its constitutional claim, 42 U.S.C. § 1983, has been recognized as an "expressly

authorized" exception to the Act. *Mitchum v. Foster*, 407 U.S. 225, 237 (1972). Therefore the Court's equitable powers are not restrained by the Anti-Injunction Act.

III.

Having concluded that no procedural or jurisdictional bar forbids this Court from hearing this case or limits the granting of equitable relief, the Court will proceed to discuss the merits of the action.

The state court order at issue here (Doc. 1-12, pp. 1-2) granted an injunction against Secretary of State Schedler:

a) Prohibiting him from holding an election of the Republican State Central Committee using the same composition as that of the previous Committee; and,

b) Ordering him to schedule the election, without delay, of the Republican State Central Committee providing for one hundred forty-four members, with one member elected from each of the districts from which members of the House of Representatives and the Senate of the Legislature are elected, as provided by law.

The correctness of this decision, rendered under state statutory law, is irrelevant to the matter at hand. No constitutional arguments were presented in that case. The decision rests solely on state statutory grounds, as the petition of the state court plaintiff makes clear. (*See* Petition for Declaratory Judgment and Injunction in *Treen v. Schedler*, No. 606,633, 19th Judicial District Court, Section "D", Parish of East Baton Rouge).

While the Court is concerned with the speed and informality with which the parties have presented their arguments, the only alternative to the present course of action is inaction. Inaction in this case would allow the constitutional rights of the Party, its members and officers—and by extension, all voters in the Republican primary—to fall by the wayside. Pressing deadlines call for speedy resolution, even at the risk of marginal error, lest the procedural niceties defeat the vindication of substantive rights.

While States have broad power to regulate the time, place, and manner of elections, the State must nonetheless observe the limits established by the First Amendment rights of the State's citizens. *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 217 (1986). Numerous cases hold that strict scrutiny applies to state laws which place burdens upon the constitutional rights of political parties and their members. *See, e.g., Eu v. San Francisco County Democratic Central Committee*, 489 U.S. 214 (1989). Such burdens can only be justified if the State shows the law "advances a compelling state interest … and is narrowly tailored to serve that interest." *Id.* at 222 (citations omitted).[3] States cannot enact laws "to prevent the parties from taking internal steps affecting their own process for the selection of candidates" because "determination of the structure which best allows [the party] to pursue its political goals, is protected by the Constitution." *Tashjian*, 479 U.S. at 224. "Freedom of association also encompasses a political party's decisions about the identity of, and the process for electing, its leaders." *Eu*, 489 U.S. at 229.

The statute at issue here, La. R.S. 18:443.2(7), burdens the Party's decision in selecting its leadership by forcing it to submit an election plan for the approval of state election officials within a certain time frame. While the regulation on its face may contain sufficient neutrality of purpose and demonstrate narrow tailoring in the abstract—an issue the Court need not and does not decide today—enforcement of the statute in this scenario deprives the Party of any meaningful opportunity to draw electoral districts for the RSCC (and thus select its leaders) as it desires. The choice regarding what criteria and data inputs govern the districting of RSCC seats is left to the

---

[3] At times, the Court has called for tailoring which results in "the least drastic means to achieve [the State's] ends." *Illinois State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 185 (1979).

sole discretion of the party, not the State.  *Cf. Eu*, 489 U.S. at 232-33 ("[A] State cannot substitute its judgment for that of the party as to the desirability of a particular internal party structure….").   The Party in this instance chose to rely on updated Census information and updated precinct allocations in order to choose Party leadership which would align with electoral information applicable to public offices.  That information was not available to the Party until September 6, 2011, only two days before the statutory deadline imposed on the RSCC for submitting its election plan.  The Court therefore has little trouble in concluding that, at least in this factual scenario, the Party's ability to draw the electoral boundaries for its leadership was infringed by the State's default rule that, absent a validly submitted election plan, the Party's leadership would be composed of a certain number of members and elected in accordance with boundaries drawn by the State.   Without adequate time to process the updated electoral information and compose an election plan for the RSCC members in accordance with its established criteria, the State's statutory default plan operated in this instance to burden the associational rights of the Party and the RSCC.

Having found that the Party's associational rights were burdened by the State, the question turns to whether the State's law satisfies strict scrutiny.  A State has an indisputable compelling interest in preserving the integrity of the election process.  *Eu*, 489 U.S. at 231 (citing *Rosario v. Rockefeller*, 410 U.S. 752, 761 (1973)).  States may enact laws that interfere with a party's internal affairs when necessary to ensure that elections are honest and fair.  *Id.* (citation omitted).  It may well be true that the present regulation governs the Party's internal governance only as an "indirect consequence of laws necessary to the successful completion of a party's external responsibilities in

8

ensuring the order and fairness of elections." *Eu*, 489 U.S. at 232. But regardless of the intensity and urgency of the State's interest, it must yield to constitutional imperatives when it lacks the narrow tailoring required to sustain the law.

Here, the Court can only conclude that the law as applied to the Republican Party in this case fails to demonstrate the requisite level of tailoring. The Secretary of State's attorneys admitted that their office could process an RSCC plan submitted as late as mid-December. Given the exigencies facing the Party's leadership in either attempting to comply with an excessively short statutory deadline or facing a State-imposed upheaval in its internal governing body, the Party was faced with a classic catch-22: either quickly submit a plan without undergoing thorough scrutiny by the RSCC and other Party channels, or submit itself to the State's default election plan at odds with Party wishes. While the Secretary of State's office may have been within its statutory rights to refuse to recognize an election plan submitted by the Party on authority of the Executive Committee as opposed to the RSCC, in doing so it allowed a triumph of form over substance. Moreover, while the Secretary of State's office may perhaps take cognizance of the Party's internal bylaws in determining whether a plan was validly submitted, under the circumstances present here, doing so impermissibly infringed upon the Party's paramount rights of constitutionally protected freedom of association by denying it a meaningful opportunity to submit a valid RSCC election plan. This denial becomes even more constitutionally intolerable since the law imposes a 90-day pre-qualifying requirement on election plan submission by the RSCC despite allowing longer deadlines (*i.e.*, deadlines closer to the beginning of qualifying) for other matters, like a January 13, 2012 deadline for submitting propositions.

Because La. R.S. 18:443.2(7) applies in this case to infringe upon the Republican Party of Louisiana's constitutionally protected rights of political association without narrow tailoring, the Court must find its application unconstitutional in this case.

IV.

Based on the foregoing discussion, the Party has shown a likelihood of success on the merits. Moreover, they have demonstrated a substantial likelihood of suffering irreparable harm—the loss of the Party's and its members' ability to govern their internal affairs and decide how their governing body shall be elected—in the absence of equitable relief. The threatened injury to the plaintiffs also outweighs the threatened harm to the defendant. The Secretary of State has admitted to being capable of administering and implementing the plan the Party has already given it. Thus the State's interest in an orderly election will still be vindicated, minimal costs will be incurred for its expedited consideration of the Party's plan, and the Party nonetheless gets to use its plan rather than being subjected to the statutory default plan. Because all parties still have a chance to come out winners in this ordeal, the equities tip strongly in favor of the plaintiff. Finally, the relief requested is in the public interest. The voters at large, and obviously Republican primary voters in particular, have an interest in having the political party they affiliate with governed according to the standards the Party sets. For these reasons, the four traditional elements for equitable relief are present in this case.

V.

Of course, declaring the statute unconstitutional would be a hollow victory for the Party if the Secretary of State is still compelled by the state court order to conduct the

election under the unconstitutional statutory default plan.  Fortunately, the Constitution provides an answer—and a remedy.  The Supremacy Clause declares:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const., Art. VI, cl. 2.

The state court order decided a case and issued injunctive relief based wholly on a reading of state statutory law.  As the Court previously noted, this may well be a correct reading of this isolated provision of state law.  This Court, however, has had the benefit of briefing on what the Constitution of the United States says on the matter.  The Court must respectfully conclude that 42 U.S.C. § 1983 authorizes an injunction countermanding the state court order.  To whatever extent the state court order requires otherwise, this Court orders the Louisiana Secretary of State and the Louisiana Commissioner of Elections to comply with this Court's order.

VI.

Accordingly, the Court GRANTS without security the Republican Party's application for a temporary restraining order and motion for preliminary injunction.

The Louisiana Secretary of State, Tom Schedler, and the Louisiana Commissioner of Elections, Angie Rogers, are hereby ENJOINED from conducting qualifying for or elections for seats on the Republican State Central Committee pursuant to any other plan except the plan already provided to them by the Republican Party.

Signed in Baton Rouge, Louisiana, on November 30, 2011.

_____
**JAMES J. BRADY, DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**